versus Alliant Insurance Services. Go ahead, sir. May it please the Court, my name is Richard Simpson. It's my privilege to represent Alliant Insurance Services in this appeal. The trial in this case, the second trial in this case, went badly wrong from the very beginning. And it went wrong not because of an exercise of discretion under proper legal standards, but because of a series of decisions made under wrong premises, under premises that are simply wrong as a matter of law. I want to identify some of those, because it is more than one. The district court began with the premise that the jury at the first trial must have found all three types of negligence that were included in the jury instructions. And that's just wrong. There were no special interrogatories. The jury instructions said you can find negligence based on one or more of three things. One was the limit was reduced without authorization, consent, or knowledge. The second was basically negligence in not identifying an error in endorsement three. And the third was negligence in not communicating with the right people. The district court said we have to presume that the jury found that this reduction was made without knowledge, consent, or authority. And that's just wrong. With no special interrogatories, we don't know what they found. And then later, that was towards the beginning of the trial, in the jury instruction argument when we argued that the court should not instruct the jury that our negligence caused the reduction of the limit, which instruction was given over our objection, the district court said that, and when we posited alternative theories by which the jury could have found liability in the first trial without finding that there was knowledge, consent, or authority, or no knowledge, consent, or authority, the district court said our view was not a realistic view of what likely occurred at the first trial. Well, again, without special interrogatories, courts are not permitted to speculate about what a jury likely found. Whether or not one would consider it likely, the jury instructions allowed the jury to find liability on a different theory, and we can't presume they didn't. The third is the assumption, the premise, rather, for the district court's decision that the jury necessarily decided the negligence claim before it decided the ratification claim. And if you look at the jury instructions at page A167 to 168, that, again, is just wrong. The instructions talk first about negligence, and they say if you find negligence, you have to find liability unless you find ratification, and then define ratification. They never say you have to reach a verdict on negligence before you talk about ratification. And a reasonable juror reading those instructions would rightly think we don't have to come to a final conclusion on negligence before we talk about ratification. We can talk about the whole package, because the only question asked of us is, is there liability on negligence? And subsumed within that one question is ratification. So that is also wrong. I should mention the quote about not a realistic view is at page A1170. That's the one page that's not cited in our brief. We cite elsewhere where the judge says that you must presume that all three were found. So that's the background. And then when you get to the first day of trial, the parties, as our brief makes clear, the court, after the first trial, granted a new trial, and the order twice says granting a new trial on the negligence claim and the ratification defense, not a hint that it was anything else. The parties did their pretrial submissions on that basis. The pretrial order reflects the plaintiff will go first. It will try negligence and ratification. It reflects everything you would expect. And on the morning of trial, the judge announced for the first time that no, the trial would be limited to ratification. And in doing that, the colloquy reflects that the court applied a wrong legal standard. The standard the court applied, and this is clear in the colloquy, is whether or not there was any error in the negligence instructions and whether negligence and ratification are separate concepts. That's not the test. The test is you don't get to this issue of can it be a partial retrial until you conclude there's an error in one part and not the other part. The appropriate test is are the two sufficiently interwoven that it would be prejudicial, that it would be confusing to try the two together. Why was it so confusing in this context? I mean, you don't get to ratify. Whatever the first set of instructions said, you don't get to ratification until after you've found negligence. It's a logical matter. Isn't that right? Well, they're overlapping, Your Honor. In fact, the Drumgold case is not on point factually. It's a First Circuit case but reflects it very well. And that is the notion that when you have all the same evidence relating to two issues and the second jury looks at all the evidence but they're told you can't make your own judgments about that evidence with a fresh start. You have to look at all the same evidence but through the prism of being told what that shows on one issue. It's inherently confusing when they have everything in that way. And the other thing I would say is if you look at how closely interwoven they are, particularly the proximate cause element of negligence, that has to do with whether what negligence you find, the negligent act, resulted in the lower limit when the hurricane came. Ratification goes to, very similarly, was there knowledge and acceptance? And so the two really are interwoven. And, in fact, that's why you can't say with confidence that the incorrect instruction on ratification at the first trial didn't affect the outcome on negligence because the jury was told that approval can't be by silence or acquiescence. And if the jury is looking at the very similar issue of was there proximate cause from whatever negligence we found, there again is the overlap there of, well, if they knew about it and accepted it, maybe there wasn't proximate cause. Again, the cases reflect that a problem with one can affect the other, but the key is the overlap, Your Honor. It's just completely overlapping facts, exactly the same evidence. And that came through. The evidence presented wasn't changed one iota by this decision. And, again, our district judge obviously is a brilliant judge, no question about that. But he acknowledged, and, again, we didn't cite this exactly. We argued in our brief, and it's apparent, I think, that this was a spur-of-the-moment decision. There was no briefing. There was no argument other than just before the jury was impaneled. But the judge acknowledged that Appendix 448 and Appendix 450, they didn't focus on the scope of trial until the morning of trial. And so it was simply a matter of it was the wrong legal standard. We argued the two are intertwined. He acknowledged that may be true, but it doesn't matter when, in fact, it's dispositive. You've reserved some time. I reserved the balance of my time for about unless there are additional questions. I will address it at that point. Thank you. May it please the Court. Thank you for the opportunity to appear. My name is Dennis D'Antonio. I represent the appellee, and I was trial counsel below. During the first trial, the judge gave an instruction to the jury that was incompletely cited to this court in argument just a moment ago. What the judge said to the jury, record SPA 8, was that if you find that the plaintiffs have proved by a preponderance of the evidence, colon A, that Alliant was negligent in one or more of these ways, comma, this is the part that was left out, and B, that as a result, that's your proximate cause, the coverage limit was wrongly reduced from 30 million to 10 million, you must find Alliant liable for negligence. So the operative word there is wrongly. If it's wrongly reduced, it's not with authorization. That is necessarily a fact that was part of the instruction to the jury. And at the first trial, Alliant argued that they had authorization to reduce it. That was rebutted by a plethora of evidence, and the absence of evidence, since there was not one single piece of evidence that supported that, and the oral testimony they relied upon by someone named Matthew Turetsky, he changed his story four or five different times, and no one at Alliant was ever told by Mr. Turetsky that he had received the oral authorization. I've got a question. Yes, Judge. Somewhere along the line, things were going reasonably understandably. They wanted to increase it to 30, right? What happened to Mr. Gerber? He got cut out of the pattern for whatever reason. That's another point. That's a very good point that's worth mentioning. When Alliant was given the opportunity to place this coverage and earn the commission that would have gone with that, they were given a set of written specifications by Mr. Gerber. He was supposed to be? Yes. He's been doing this 30 years. And the written instruction was, I am the only person you communicate with, I make all of the decisions, and anything you do that materially affects this policy must be given to me in writing. One little thing happened, though, along the way. A vice president of your client did communicate. It wasn't the janitor from the company. It was the vice president. Well, first of all, the vice president testified that he's not involved with insurance, that it's delegated to Mr. Gerber. And, Your Honor, it's important to understand what I presented at trial, which was that this was not the kind of policy you or I would buy. This policy was for billions of dollars involving 150 locations throughout the country with all different intermingled corporations and partnerships of ownership and different mortgage standards that were required, different insurance limits required, and it was one of six programs of insurance written on Canobie's assets. So the vice president, who's the son of the founder of the company, who spends 95% of his time on finance and acquisitions, he never communicated directly. He saw a CC e-mail. Actually, they CC'd him on an e-mail to his secretary speaking to this policy, and he said he doesn't even recall having seen it. The secretary testified that she doesn't know that he saw it, that he gets hundreds of e-mails a day, and she frequently asks him questions, and he doesn't respond. The response was a yes. And, Your Honor, there's an e-mail that we put into evidence afterwards in August, after all of this alleged knowledge, where another person representing one of the entities says, I spoke to Elie Schroen, the vice president, and he told me we have $30 million worth of coverage. And we contend, of course, that that's. . . This e-mail was after the August 5th e-mail that Mr. Schroen offered? Yes, Your Honor. Daniel, can you just give me the. . . Yes, it was. So there was some conflicting evidence, but most of the evidence that my client knew was contradicted by tons of evidence. To the contrary, as both juries found, because if either jury found that we had authorized or ratified, we would have lost the case. Going to the question of the retrial, the judge. . . You cannot come to ratification without negligence. It doesn't exist. Ratification can only be addressed by a jury if they find negligence. The jury at the second trial, or the first trial, sent two notes to the judge asking for clarification on ratification, clearly having found negligence, and now they're working on whether or not there was ratification. And the judge reversed himself on the very limited ground that his instruction may not have been sufficiently clear that under New York law silence could be ratification. So he reversed on ratification. It would have been imminently unfair to the plaintiff, who the jury did find in the plaintiff's favor on negligence, to require the plaintiff to now come back and prove negligence again in order to rehear the ratification, because the only ground to give the appellant the second shot was the inadequacy of the ratification. And Judge Rakoff clearly, intelligently, rightfully said, why would we try negligence again if the jury charge that created the error was on something that could only arise after I told the jury that if you find that it was wrongfully reduced, then you must find negligence unless there's ratification. And the judge said, so try ratification. If you convince the jury that the plaintiff had... ..that the appellant had...that the appellee had knowledge or subsequent to this and ratified it through silence or otherwise, then you prevail and there's your second shot, and that's the cure to the error in the first trial, which was the inadequate charge. So the case got tried a second time. I might add there were no objections from opposing counsel to the fact that the sequence of the trial was changing, I was the one who objected, but I was overruled. Also, they argued that... What did you want? Well... What were you objecting to? I didn't want to... Once I did my opening statement, I wanted to go first, and the judge said, nope, the burden of proof is on the defendant, the defendant goes first. So they presented their witness. They would have to show... First of all, the judge, in his decision, cites ample authority that he has the discretion to do that and also appellant fails to show any prejudice. They argued that because of that step that I was permitted to control the sequence of the trial, the judge points out in his second decision that I only called one witness. It was all of their witnesses. They withdrew their objection to taking certain witnesses out of turn who they had flown in from out-of-state Alliant employees. And also, I've heard arguments to this Court that were not briefed below, that are being essentially argued for the same time, just as Judge Rakoff pointed out, that they didn't object to the original charge on negligence as it was given. That charge required proximate cause. It required wrongful conduct, a wrongful reduction of the coverages by Alliant. And once the jury came back and found negligence in the first case, there was no question they found it was without authorization, rejecting the testimony, the only testimony, the only evidence that there was an authorization, which was the testimony from Matthew Teretzky, which was discredited to the extent that the jury, I don't think, credited him in either trial. In fact, his errata sheet, which was commented on by the judge, was six pages with 168 answers to his deposition, changed as his story evolved over time, ultimately resting on a version of authorization that was verbal with no corroboration whatsoever. And it was shocking to me, in fact, that the defendant, the second time they tried the case, again attempted to try the case on the grounds that there was authorization, even though that issue really should have been moot at that point because it was more just a question of ratification after the fact, not authorization before the fact, but Judge Rakoff allowed them to put whatever evidence they wanted to put in before this jury, including they called Matthew Teretzky again to again testify that he met with Ellie Schrone and he was reducing the coverage pursuant to instructions, even though there was no evidence to support that, and his own colleagues at Alliant had different versions of what Matthew had told them. So they were given every opportunity to try the case twice. They argued negligence twice because even in the second trial they argued that they had authorization, even though they shouldn't have been permitted to do that. And at the second trial they got the charge that they wanted with respect to ratification, recognizing that silence could be ratification, and again the jury found that there was no ratification. And if the jury found that there was no ratification, then the jury could not, even if it had been given to them, have found negligence because then they would have found that it wasn't wrongfully reduced from $30 million to $10 million. So our view is, and I realize I'm done, but is that the appeal is much ado about nothing. This case had been thoroughly heard and correctly decided, and it really should end at this point. Hurricane Sandy is a distant memory, and this case should also become a memory. What exactly was the verdict of the jury? There was no dispute with respect to damages. So if, in fact, the jury found that the policy was reduced negligently by Alliant and they didn't accept Alliant's defense of ratification, then that means Alliant's on the hook for the difference between what the policy should have been and turned out to have been. So it was a $30 million policy. The binders, the policy, everything said $30 million, but it was actually $10 million because of the actions that were the subject of the litigation. So the jury verdict was negligence. They rejected ratification, and that verdict is a $20 million verdict now against Alliant to make up the difference caused by their negligence. Thank you, Your Honor. All right, Mr. Simpson, you've reserved three minutes. Thank you, Your Honor. Judge Cabran, that question about what did the jury find is critical. The first jury only found one thing as to Alliant, liability for negligence. Everything else was wrapped into that question, including ratification and proximate cause. It was one question all wrapped together, and so we don't know how they got there. We only know that they got there, and it could have been any of several different ways, some of which do not require a finding that there was no authority, knowledge, or consent. The jury could have believed Mr. Teresky's testimony, that Mr. Schroen told him to reduce it, and still found against us, found against Alliant. And Judge Goldberg, to your question about Gerber, Mr. Gerber being cut out, that was a disputed issue of fact at the first trial, at the second trial. We don't know if the jury found at the first trial he was cut out or not because, again, there are ways they could reach that verdict, finding he was cut out, and finding that Mr. Schroen had authorized it. There are ways they could get to other results. We don't know what they did, but you can't say the jury found that because we don't know. As far as the knowledge, and I haven't mentioned the motion for judgment as a matter of law because I think it's fully briefed, but Your Honor's question about that e-mail, as of that point, Mr. Schroen's knowledge, it's a subjective question. Did he know or did he not know? There's a mountain of circumstantial evidence that we cite that he did know. He said, I didn't read my e-mails, I don't pay attention. Well, he's the vice president in charge of insurance, and he's an insurance broker who got half the commission for this account. But put that aside. The circumstantial evidence says that he knew. He writes an e-mail that admits, it says, we have $10 million of coverage. This is the day after he got an e-mail saying we've reduced it to $10 million, here's your lower premium. So that's a clear admission. And if that e-mail means what it says, he had knowledge, and he took the lower premium. What's his explanation? It's this notion, well, I thought it was the National Flood Insurance Program of $500,000 per building times the 20 buildings in that complex. There aren't 20 buildings in the complex. And in our reply brief, we go through at least seven or eight reasons that that is preposterous. Now, it's very rare for a court, of course, to look behind a jury verdict, but there are cases, including the Rojas case that we cited, in which, Judge Capron, as you were on the panel, in Rojas the court says that a court needs to at least look behind to see for plausibility. Otherwise, it's a license for the mendacious to enter the litigation lottery. And that's what happened here. So we think judgment as a matter of law is appropriate. But if not, surely it needs to be retried. Precisely because of the complete overlap of evidence and close issues, and it's not a discretionary matter when the court applies the wrong standard. And as I said, this was clearly the wrong standard, and it was the wrong standard for when you have to complete retrial. And it's just wrong to say I can infer what a jury found when there were three possibilities based on a jury verdict. It's not permissible. That's just a legal error. So we respectfully request that the court enter judgment as a matter of law or alternatively order a new trial. Thank you, Mr. Simpson, very much. Both arguments were well done and much appreciated. We'll reserve decision, and we are adjourned. Court is adjourned.